UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CAUSE NO. 2:25-CR-130 |
| v. ) | |
| ) | 18 U.S.C. § 1343 |
| QUINTIN FLOYD ) | |

### INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

-FILED-
NOV 1 2 2025
At_____M
Chanda J. Berla, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

At all times material to this Information:

### The Scheme to Defraud

1. Beginning, at least, in or about February 2022 and continuing at least through in or about November 2022, in the Northern District of Indiana, and elsewhere, **QUINTIN FLOYD**, knowingly and with intent to defraud, devised, intended to devise, and participated in a scheme to defraud that involved obtaining money by means of materially false and fraudulent pretenses, representations, promises, and concealments.

### The Objective of the Scheme

2. The purpose of the scheme was to fraudulently obtain money that was under the custody and control of others to which **FLOYD** was not entitled.

## The Manner and Means Used to Carry Out the Scheme

3. **FLOYD** obtained credit card and debit card information belonging to others which **FLOYD** did not own and was not authorized to use. Such credit card and debit card information, including card numbers belonging to other individuals, was available for sale on Website A without the card owners' knowledge or authorization. Website A was in the business of selling stolen credit and debit card information. **FLOYD** purchased such stolen credit card and debit card information in order to fraudulently obtain money from the cards.

4. DraftKings is an online sports wagering platform. **FLOYD** gained control of DraftKings accounts that were opened in the names of his family members, friends, and others. **FLOYD** deposited money from the stolen credit cards and debit cards he had purchased into the DraftKings accounts. **FLOYD** made these deposits without the card owners' knowledge or authorization. By making these deposits, **FLOYD** funded the DraftKings accounts not with money that belonged to himself or the DraftKings account owners, but instead with funds originating from the stolen credit cards and debit cards he had obtained. As part of the scheme, **FLOYD** personally misrepresented that he was authorized to use these cards.

5. **FLOYD** made such fraudulent deposits at his residence in Gary, Indiana, and in other locations in the Northern District of Indiana.

6. After making fraudulent deposits into DraftKings accounts, **FLOYD** ultimately obtained money that had originated in the credit and debit card accounts for his personal use and benefit.

## Wire Transmission

7. On or about August 2, 2022, in the Northern District of Indiana, and elsewhere, the defendant,

## QUINTIN FLOYD,

for purposes of executing the above-described scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses and representations, did cause to be transmitted by means of wire communication in interstate commerce certain signs, signals, and sounds, that is, make an online deposit of money using the internet into a DraftKings account that caused a signal to a computer server that processed DraftKings deposits located in South Charleston, West Virginia,

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

1. The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(c).

2. Upon conviction for the offense in violation of Title 18, United States Code, Section 1343, alleged in the Information, the defendant, **QUINTIN FLOYD**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation, including but not limited to the following:

   a. White gold pendant with 822 diamonds with monogram "TSE"

   b. White gold rope chain necklace

   c. $3,720 of United States Currency

   d. Silver watch labeled "Cartier"

3. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

M. SCOTT PROCTOR
ACTING UNITED STATES ATTORNEY

By:   */s/ Kevin F. Wolff*
       Kevin F. Wolff
       Assistant United States Attorney